GEORGE HUNTER *et al.*, Appellants, *v.* SAMUEL P. GRIFFIN, Appellee.

### APPEAL FROM FULTON.

Where it appears that an agent, who is the principal witness in support of a bill, colluded with the complainant, to take an unfair advantage of a non-resident owner of land—by ante-dating a contract, and otherwise deceiving his principal, —his agreements will not be enforced, and the owner of the land will be protected, and the bill for a conveyance will be dismissed.

ON the 15th September, 1855, a bill in chancery was filed by the appellee, in the Fulton Circuit Court, wherein Samuel M. Beckwith, of Madison county, New York, and the appellant, George Hunter, of Fulton county, Illinois, were made defendants, to compel a specific performance of a contract for the conveyance of the N.W. ¼ 9, 8 N., 4 E.

The bill charges that, sometime in the commencement of the year 1853, one of the defendants, Samuel M. Beckwith, authorized Dennis Saunders to sell the premises to the complainant, and that, in accordance with the authority, Saunders, as the agent and attorney of Beckwith, sold the land to the complainant on the 13th May, 1853, and delivered the possession, and agreed to convey by warranty deed on the payment of the purchase money ; that the complainant agreed to pay $800, in installments ; that the complainant took possession at that time and continued thereon ever since ; that afterwards Saunders informed Beckwith of the sale and the terms, when Beckwith confirmed the contract and promised to send a deed ; that the purchase money had been fully paid to Saunders and a deed demanded of Saunders, when the complainant was informed that Beckwith refused to convey, but, on the contrary, had conveyed the land to the other defendant, George Hunter ; that the complainant found recorded a deed from Samuel M. Beckwith and Elizabeth his wife, dated 7th March, 1854, and recorded on the 8th May, 1854 ; that, at the time this deed was executed, the complainant was in possession of the land, cultivating it and paying taxes.

The bill prays an answer under oath, and that Beckwith be required to execute a warranty deed, and Hunter a quit-claim deed to the complainant, conveying the land, and for general relief.

To the bill a copy of the contract is attached, as an exhibit, whereby it appears that a penal bond, in the usual form, was executed under seal by Beckwith through Saunders, his agent and attorney.

On the 24th May, 1855, both the defendants filed several answers under oath.

The defendant Beckwith admitted that Saunders was his agent to lease the premises and to collect a demand for money due, but denies that he was his agent or attorney for any other purpose, and expressly denies that he authorized him to sell the land or give a contract therefor, and charges that in the communications made to the respondent, with reference to the sale, that Saunders acted as agent of the complainant. The answer admits that Saunders informed the respondent that complainant desired to purchase the land, and states that the respondent informed Saunders on what terms he would sell the land to complainant; and at the request of Saunders, for the complainant, the respondent executed a contract on his part in accordance with such terms, which were, that he would execute the deed himself, but not to be executed by his wife, who refused to do so for that price, for $800, $300 cash to the respondent, in person, and the residue to be secured by mortgage, or sent by sight draft on Utica, N. Y., and sent the contract to Saunders to be executed by the complainant on his part, but that Saunders returned the contract by letter, not signed by the complainant, with the information that the complainant was informed that respondent had no title, and that therefore he would not purchase; that the respondent then destroyed the contract and letter, and informed complainant, through Saunders, that he had taken him at his word, and would have no further communications on the subject. The answer avers that if any contract was executed by Saunders, in behalf of the respondent, it was done after he was notified that the matter was ended. The respondent admits, that after this time he sold and conveyed the land to his co-defendant, George Hunter.

The answer of the other defendant, George Hunter, expressly denies that Saunders was authorized to sell the premises to the complainant, but that the respondent had heard that Saunders had been employed by Beckwith to see to the land and collect rent for a small portion then in cultivation. The respondent states that he had no knowledge of the execution of a contract by Saunders, as agent of Beckwith, on the 13th day of May, 1853; that the complainant never had actual possession of the whole of the tract, but only of about 14 acres in the north-west corner, and that the rest was vacant and unoccupied; that the 14 acre piece had been cultivated by different persons for the sixteen years prior thereto; that at the time of the pretended purchase by the complainant, the 14 acre piece was cultivated by Moses B. Chapin, a tenant of Beckwith, and that Chapin continued in the possession thereof until after the pur-

chase by the respondent, but admits, that after the purchase of Beckwith by the respondent, the complainant entered into the possession of the cultivated part, and has occupied it since, but charges that before such entry, the respondent gave notice to the complainant that he owned the land. The respondent states that he has no knowledge as to the payment of the purchase money, or the refusal of Beckwith to convey. He admits that the premises were conveyed to him by the deed of Beckwith and wife, bearing date 7th March, 1854, and charges that he purchased the same in good faith for one thousand dollars, of H. S. Austin, of Peoria, as agent for Beckwith, about the 20th February, 1854, and expressly denies notice, actual or constructive, of any contract of the complainant, until long after the execution and delivery of the deed by Beckwith and wife to him.

Replication was filed to these answers on the 1st June, 1855.

On the same day a decree of reference to the master was entered, authorizing him to take the evidence in vacation and report to the court.

On the 19th October, 1855, an amended bill was filed, suggesting the death of the defendant, Samuel M. Beckwith, leaving Elizabeth Beckwith his widow, and D. Lansing Beckwith, Samuel H. Beckwith and Edward Beckwith (the two last minors) his children and heirs at law, and charging that the defendant, Hunter, had commenced an action of ejectment against the complainant to recover the possession of the premises. The amended bill made the widow and heirs defendants, and prayed that the ejectment suit be enjoined.

The defendants, Elizabeth Beckwith, Samuel H. Beckwith and Edward Beckwith, were brought in by publication of notice. No service was had or notice given to D. Lansing Beckwith.

On the 14th October, 1856, the defendant Hunter, filed his answer to the amended bill, and admits the commencement of the ejectment suit, and that Samuel H. Beckwith had died since the commencement of the suit, but states that the respondent had no knowledge as to who were left his heirs. The answer is under oath.

On the 24th February, 1857, Elizabeth Beckwith and D. Lansing Beckwith filed an answer by their solicitor (but not under oath) to the original and amended bills of the complainant.

The answer admits that Samuel M. Beckwith and wife, in his lifetime, on the 7th March, 1854, conveyed the land to Hunter, and denies that Saunders had any authority whatever to sell or contract the premises to complainant, and admits the commencement of the ejectment suit, and that Samuel H. Beckwith left the persons named in the amended bill as his widow and children.

To the answer of Hunter to the amended bill, and the answer of Elizabeth Beckwith and D. Lansing Beckwith, there was no replication filed.

On the 11th day of May, 1857, in vacation, the complainant and his solicitor, and one of the defendants, George Hunter, and his solicitor, appeared before the master in chancery and agreed to the taking of depositions and evidence, which was taken and reported, with exhibits referred to by the witnesses, to the court, on the 2nd day of June, 1857, during the sitting of the court at the May term of that year.

The following is the evidence so taken:

*Dennis Saunders* was produced by the complainant, who testified that his residence was Farmington, Fulton county; that he saw Samuel M. Beckwith once only, at the residence of the witness, in 1851; at that time Beckwith resided in Hamilton, N. Y.; that he claimed the N. W. ¼ 9, 8 N., 4 E., as owner; that the witness had acted as agent to pay taxes or sell the land from sometime in 1852, and he had no notice that the agency had yet expired; he had paid taxes on the land, and, as agent for Beckwith, in May, 1853, had sold the land to complainant for eight hundred dollars, three hundred to be paid next January after, and the balance in two equal annual payments, with interest; he delivered possession on 14th day of May, 1853, to complainant; when the first payment became due, Beckwith had not met his engagements; had not sent the papers as he agreed; the money was ready, and complainant deposited it with Horatio Reed, who gave complainant his note for it, which was received by the witness, as agent for Beckwith, in discharge of the first payment; that payment was offered by complainant; he told me it was ready; the witness notified Beckwith it would be ready, and how he wanted it sent; have had correspondence with Beckwith; have no other knowledge of his hand-writing; the witness wrote to Beckwith, and received answers, signed with his name, in reply.

Letters marked exhibits A, B, C, D, E, F and G, were shown witness, and he asked whether he had seen them before, and whether they were written by Beckwith, to which objection was made.

The witness stated that he had received them through the post office, and he believed them to be written by Beckwith to him.

Exhibit A, is a letter dated Hamilton, Nov. 25, 1852, directed to Saunders and signed by Beckwith. It states that he would have written, had he known his given name, sooner, to solicit him "to take charge of his land and see to paying the taxes," etc. He had written Mr. Austin several times, but received no answer

until lately, when he learned that Austin had removed to Peoria, and was too far removed to attend to the same. If Saunders would consent to see to it, he would send a power of attorney, so that he could "do any necessary act in collecting rent or leasing," etc. He desired full information as to how matters stood, what Hixon owed on that year's rent and the year previous; whether he paid in money or crops, etc.

Exhibit A, is a letter from Beckwith to Saunders, dated Dec. 27, 1852. Beckwith acknowledges the receipt of a letter, in which Saunders consented to accede to his wishes in taking charge of his matters, and that Saunders had not the means of knowing about the affairs of Beckwith. The letter then proceeds to give such information as had been furnished by Austin, from which it appears that Hixon was a tenant, and was in arrears for rent of 1851; that the account of Austin had been rent, that was not clear; that there had been a log cabin removed by young Hixon, which he wanted returned, or five dollars paid for it; that Saunders was to get fifteen dollars and twenty-two cents and the papers from Austin, and send by express to Beckwith. The letter also states that Austin had written him that an offer had been made to buy the land, but he did not conclude to accept; if he had a satisfactory offer he would sell, but he was so far away he could not judge of the value, and wished Saunders to inform him what the place would sell for; whether any more settlements had been made about it; whether the adjoining lots were sold and occupied, etc.; and to receipt to Austin for what he received and he would give further orders.

Then follows a power of attorney, which is in these words:

KNOW ALL MEN BY THESE PRESENTS, That I, Samuel M. Beckwith, of the town of Hamilton, county of Madison, and State of New York, do hereby make and appoint, by these presents, Dennis Saunders, of the town of Farmington, Fulton county, State of Illinois, my true and lawful attorney to transact all business in my name, relative to leasing my property in said town, county, and State of Illinois, being lot 9, 8, 4, and collecting rents of the same, or damage, and to give receipts for the same, or to sue for and recover the same in a manner as fully as I myself could do if I were personally present.

Given under my hand and seal, this 27th day of Dec., 1852.

(Signed)                S. M. BECKWITH.

Exhibit C, is a letter, without date, from Beckwith to Saunders, which is as follows:

Mr. SAUNDERS—*Sir:* Yours of the —— came duly to hand with the money, one bill of which I return to you as being uncurrent in this place; it may be good with you. I understand you to say you are offered $800, $300 down and the balance in two yearly payments, with annual interest on the same. You may say to

the person that he may have the lot on those conditions. I suppose if he takes it he will want a deed and give a mortgage, or he can take a contract. You can write me by return mail, and if it becomes necessary for me to come out, he can enter upon it and commence his spring work, and the proper arrangements can be made as soon as practicable; or I have thought of this, to propose to put the same up at auction at his offer as the first bid, and if any one chooses to run it up and pay more, very well; if not, let him take it. If this course is to be pursued, it would be well to tell him this proposition is submitted, and see what he says. I leave you to act your judgment on this.

Exhibit E, is a letter dated Hamilton, May 12, 1853, from Beckwith to Saunders, which is as follows:

DEAR SIR: Yours came to hand safe, in which you do not allude to the one dollar bill which I enclosed to you, the same being uncurrent here. In your first I could not quite understand the time of the first payment, but in your last you say that he will pay me $300 the first of January, and the balance in two annual payments, and the interest on the same. You can make an arrangement to that effect, and I will send you a bond if he concludes to take it on those conditions.

Exhibit D, is a letter dated Hamilton, Oct. 26, 1853, from Beckwith to Saunders, and is as follows:

Mr. SAUNDERS—*Sir:* Your last came safely to hand in due time, in which you speak as though you were in some doubt as to my mind in regard to selling the farm to the present occupant. I wrote you that he could have the farm, and I would allow him to enter upon the same then, and that I would make out the necessary papers before the time came for the first payment, that is in January, and date them back to the time he took possession. The reason why I have not, is because I did some expect to come out as far as Chicago, and in that case I should probably come to your place, so you need feel no uneasiness as to the conveyance. You are authorized to secure a conveyance from me by any proper course, if the tenant desires, at once.

Exhibit F, is a letter dated Hamilton, Dec. 27, 1853, from Beckwith to Saunders, and is as follows:

Mr. SAUNDERS—*Sir:* If the name of Mr. Griffin is not correct, you can correct the same, and as I had none of my papers here, I was not quite certain that the description might not be faulty, if it is, you can rectify that; also, you will please figure the matter out correctly and write me by mail, and, also, send the draft as soon as possible, and also inform me about Hixon's arrears, and send me one of the papers, he signing both of them *as I have* done.

Exhibit G, is a letter dated Hamilton, Jan. 20, 1854, from Beckwith to Saunders, in which he states:

Yours of the 10th was duly received, containing the contract, and the reasons given by Mr. Griffin for rejecting the same. * * * * As to giving a deed, I have as lief do so as to give a contract. You say doubts have arisen as to my ability to make a good title; if this comes from Mr. Austin, he knows better. * * * * * I wrote Mr. Austin for the papers, and on receiving them I will for-

ward to you a deed with the usual covenants. Please write me about the arrearage of rent, etc., in your next, and, further, if you have received those papers from Mr. A., you will please forward them by mail.

The witness then testified that exhibits H, I and J were notes by complainant to Beckwith for the land; that the witness took them and received the payments as agent of Beckwith, and that principal and interest were now in his hands; that the witness gave complainant a bond bearing even date with the notes, viz., May 13, 1853, marked Exhibit K, for a deed on the payment of the notes.

The witness testified that complainant had been in the possession of the premises ever since the 14th May, 1853; that before the sale to complainant, the witness had rented to Moses B. Chapin, who put in his crop that season and paid the rent to complainant, and, in the summer or fall of 1853, that Chapin delivered the possession to complainant when he took off his crops; that he thought complainant plowed the land in the fall of 1853, and sowed it in the spring of 1854.

The witness did not send the purchase money to Beckwith because he had not sent the title as he had agreed to.

On cross-examination, the witness testified that he had no other authority whatever than such as was contained in the letters marked Exhibits A, B, C, D, E and G; that there was but the one contract made with complainant for the sale; that no writing was made until the bond, marked K, was executed, which was in March, 1854, when it was dated back, because Beckwith stated in his letter that it must be dated back.

A letter from Saunders to Beckwith, marked Exhibit No. 1, was identified and offered, and reads as follows:

*Farmington, Jan.* 10, 1854.

S. M. Beckwith—*Dear Sir:* I received your letter in due time, and will say to you that I presented your article of agreement to S. P. Griffin, which he does not see fit to sign, first, because he finds in that agreement there is no one bound but himself; second, he says he will pay interest from the time that the contract was first made, in May sometime, and not before ; he also says that he will pay to your order good current money, and if you want anything more, it must be at your expense; the money is ready for the first payment. He has been informed that you could not make a proper deed to your land, and, in short, he says the manner you have written your agreement convinces him that it is more than half true. He further says that he shall not take the land unless you make him a good and sufficient warrantee deed of same, with signature of your wife attached to the same, if she is living, and he will give you a mortgage on the land. The first payment is ready, to my certain knowledge. He says he shall not pay tax until he knows what you can do about it.

The witness further testified, that in the fall of 1853, or winter of 1854, he wrote Beckwith that complainant would not take

the land, but not with the knowledge or consent of complainant, though he supposed it would be agreeable to his feelings, but complainant afterward disapproved of it; that the reason he so wrote was because Beckwith failed to send a bond, according to the agreement with the complainant; that he did send one, not as agreed, which the witness presented to Griffin, who refused to sign it, but said he was ready to abide by the contract he had made; that Beckwith did not fulfill his contract by sending a deed or bond when the first payment was due, but did send a contract that did not accord with the agreement in this, that it drew interest from sometime in April, instead of 14th May, when he took possession.

The witness further testified that the manner in which payment had been made, by complainant, of the purchase money—that in the last of February or first of March, 1854, before the bond was made by the witness to complainant, the complainant deposited the first payment with H. & A. D. Reed, and took a note payable on demand to the complainant, which the witness took without assignment; and that some time after, the complainant brought Reeds' notes for the balance of the purchase money, payable to the witness on demand; that he never had the money in his hands, and it was never offered to him, but he took these notes as payment without the authority of Beckwith; that they so remained until the spring of 1857, when he took the money of Reeds and loaned it to Field, who gave his note therefor, payable to the witness.

The witness further testified, on cross-examination, that in March, 1853, he rented the cultivated piece of 12 or 14 acres to Moses B. Chapin to raise a crop, and that while it was rented to and in possession of Chapin, on the 14th May, he made the contract, and had nothing to do with it since.

A letter bearing date April 17, 1853, from Saunders to Beckwith, was offered and identified, which is as follows:

*Farmington, April* 17, 1853.

MR. S. M. BECKWITH—*Dear Sir:* I received yours, not bearing any date, in due time; and I think you will find in my former letter, unless I did not write what I meant to, that the person, or Mr. S. P. Griffin, who made you an offer for your place, said he would pay $300 down the first of next January, and the remainder in two yearly payments, with interest, as you wrote in your letter. I suppose if he should take immediate possession now, he will pay interest on or from the time the contract is entered into. I have seen the man since I received your letter; he says if you have a mind to put it up to public sale, he shall withdraw his offer, for he had rather stand his chance of getting for less than he has offered; he says he will not pay any more for it than he has offered. I thought I would give you a statement of the same, and you could do as you think proper about letting him have it. I think you cannot do any better at present. * * * * * You can write immediately on receipt of this and let me know your mind in regard

to it, and if you still conclude to let him have it, all that is necessary for you to do is to give him a bond for a deed, and then, when he makes the payments, according to agreement, give a deed.   *   *   *   *   *   The fence is in bad condition; I shall not do much about it until I hear from you, and if you conclude for S. P. Griffin to have it, let him do what he thinks proper.

On re-examination by complainant, the witness testified that Griffin offered the payments as they became due ; that the notes were received as payment, and that he could get the money on them at any time, and would pay the money when a deed was made according to the contract.

On cross-examination further, he stated that he did not have the money or notes when the first payment became due, but he knew he could get it when wanted.

The witness stated that all the directions from Beckwith to him are contained in the letters marked Exhibits A, B, C, D, E, F and G, and that he had none other.

*James Armstrong* testified that he saw complainant helping thrash on the land, fall of 1855, and once saw him cut a tree ; in 1855, saw a man half a mile off, with a team, witness supposed to be him.

*Moses B. Chapin* was produced by the defendant, and testified that there were 11½ acres in the field ; that it was inclosed in common with a field of the witness on an adjoining tract of land ; that he rented it, in 1853, for that year, of Dennis Saunders ; there was nothing said about the time when the lease should terminate ; he raised a crop of oats, which he removed in August, and has not used the land since ; that Griffin called on him for the rent, but the witness refused to pay it ; Saunders and Griffin called, and the rent was paid to them ; he refused to recognize Griffin as landlord.   In the spring of 1854, the defendant Hunter and witness set out 70 rods of hedge fence on the line between the quarters, and witness borrowed a lot of rails of Hunter ; Hunter paid for one-half.   The witness had spoken to complainant the summer before ; he said he would put in the line fence the next spring ; at that time (spring of 1854) he spoke to complainant again, when he said that he did not know that he should have the land, as he did not believe Beckwith owned it ; that he had heard the title was in his wife, and that he could not make the line fence until he knew whether he should have the land or not.

On cross-examination, the witness stated that after he had taken away his oats crop, that complainant broke the land, and the first part or middle of March after, he sowed spring wheat in ; that in February, 1854, complainant told him he heard that Beckwith could not make a good title, and that he expected

Beckwith was a grand rascal, and if he could not get a deed from Beckwith and wife, he would have nothing to do with the land.

The respondent then offered Exhibit No. 3, being deed from Beckwith and wife to Hunter, dated March 7, 1854, and recorded 8th May, 1854.

*Neil Brown,* called by complainant, testified that he saw complainant once, about the middle of March, 1854, harrowing in wheat, and that the land had been plowed the fall before.

*B. N. Chapin* produced by complainant, testified that once, in the fall of 1853, he saw the team of complainant and the team of Saunders plowing the land, but did not know whether complainant was along; and once in the spring of 1854, near the 1st of March, he saw complainant harrowing in wheat.

*James Torrens,* produced by complainant, testified that once in the spring of 1854, he saw complainant harrowing in wheat on the land; the witness owned adjoining quarter on the west, and went to see witness about the line fence; he agreed to make a hedge, but backed out and would not do it.

This was all the evidence.

On the 9th day of the term, June 3rd, 1857, the court appointed a guardian *ad litem* for the infant defendants, Samuel H. Beckwith and Edward Beckwith, who answered on the same day, neither admitting or denying the allegations of the bill.

On the 11th day of the May term, June 5th, 1857, the cause was heard before WALKER, Judge of 5th circuit, on the original and amended bills, the answers and the replication to the original bill, and the evidence and exhibits reported by the master.

On the hearing, the court rendered a decree whereby the defendant, George Hunter, was required to make, execute, acknowledge and deliver to the complainant a deed of conveyance in fee simple for the premises in controversy within sixty days, and in default, the master make, acknowledge and deliver such deed, and that the costs be divided equally between the complainant and the defendant, George Hunter.

An appeal was prayed by the defendants George Hunter and Lansing D. Beckwith, which was granted.

Separate errors are assigned by the appellant George Hunter and the plaintiffs in error, Lansing D. Beckwith, Sam'l H. Beckwith and Edw. Beckwith, the last two by their guardian *ad litem*.

Errors assigned by Hunter :

1st. The court erred in requiring the defendant, George Hunter, to convey the land in controversy.

2nd. The court erred in requiring him to make a deed with covenants, or conveying good title.

3rd. The court erred in failing to require covenants of title from the heirs of Samuel M. Beckwith.

4th. By the evidence, and according to equity, the court should have dismissed the bill.

5th. The Circuit Court made no disposition of the money in the hands of Saunders, or the money paid by the defendant Hunter.

6th. The proper parties were not made to the bill.

7th. The decree and proceedings are otherwise informal and irregular.

Errors assigned by Lansing D. Beckwith :

1st. The Circuit Court erred in rendering the decree affecting his rights on the evidence produced.

2nd. The Circuit Court ought to have heard the cause as to him on the bill and answers.

3rd. The Circuit Court should have dismissed the bill.

4th. The decree renders him liable for a greater amount on the covenants than complainant pays.

5th. Dennis Saunders ought to have been a party to the bill.

6th. The court failed to enter any decree as to the money in the hands of Saunders.

7th. The proceedings are otherwise irregular and informal.

Errors assigned by Samuel H. Beckwith and Edward Beckwith, by their guardian *ad litem :*

1st. The evidence introduced on the hearing was not binding on them.

2nd. They were not represented by guardian *ad litem,* until after all the testimony was taken and reported.

3rd. In equity the complainant was not entitled to a conveyance upon the facts proven, and the court should have dismissed the bill.

4th. The proceedings are otherwise informal and irregular.

GOUDY & JUDD, for Appellant and Plaintiffs in Error.

C. L. HIGBEE and M. HAY, for Appellee and Defendants in Error.

BREESE, J.   The testimony in this cause is quite voluminous, and in no respect warrants the decree which has been pronounced.   The mind can scarcely resist the impression, on perusing it, that Saunders, the principal witness to sustain it, colluded with Griffin, the complainant below, to take an unfair advantage of a non-resident owner of land, to a degree repugnant to that sense of justice honest men are supposed to possess. That he was the agent of complainant, with an understanding, probably, to share in the speculation, rather than of the owner, and bent on working out a scheme by which the party he

favored should be benefited at the expense of the owner, can hardly be doubted. A critical examination of the whole correspondence between this witness and Beckwith, the owner of the land, living in New York, in which a most decided leaning of the witness in favor of complainant is discovered, coupled with his after acts, as disclosed by his own evidence, satisfies us that he himself well understood he had no authority whatever to execute the bond for a deed in March 1854, ante-dating the same May 13, of the previous year. His excuse for so doing, is a shallow one indeed, because Beckwith said in his letter of Oct. 16, 1853, if he, Beckwith, made the contract, *he* would ante-date it to fit the time the purchaser took possession of the land. The whole correspondence shows clearly, that the only authority this witness had to make any contract for the sale of the land, was that conferred on him by this letter dated as above, and marked as Exhibit D.

In that letter the writer says, "Mr. Saunders—Sir: Your last came safely to hand in due time, in which you speak as though you were in some doubt as to my mind in regard to selling the farm to the present occupant. I wrote you that he could have the farm, and I would allow him to enter upon the same then, and that I would make out the necessary papers before the time came for the first payment, that is, in January, and date them back to the time he took possession. The reason why I have not, is because I did some expect to come out as far as Chicago; and in that case I should probably come to your place, so you need feel no uneasiness as to the conveyance. *You are authorized to secure a conveyance from me by any proper course, if the tenant desires, at once.*"

This has reference to the previous letter, written by Beckwith, without date, and marked as Exhibit C, in which he says, "You may say to the person that he may have the lot on those conditions. I suppose, if he takes it, he will want a deed and give a mortgage, or he can take a contract."

In his next letter, of May 12, 1853, he writes, "You can make an arrangement to that effect and *I will send you a bond*, if he concludes to take it on these conditions."

No authority in found in these letters, except in "D," to Saunders, to execute any writing whatever, and that is found in the closing sentence of that letter, and was evidently granted by Beckwith to meet an emergency and save the bargain in case delay was inadmissible—nothing more. Beckwith understanding his position, executed a contract which he transmitted to Saunders in a letter, dated Dec. 27, 1853, in which he writes, "If the name of Mr. Griffin is not correct, you can correct the same; and as I had none of my papers here, I was not quite

Hunter et al. *v.* Griffin.

certain that the description might not be faulty ; if it is, you can rectify that also. You will please figure the matter out correctly and write me by mail, and also send the draft as soon as possible," etc.

Saunders returned this contract to Beckwith, as appears by Beckwith's letter, Exhibit G, dated Jan. 20, 1854, in which he writes, " Yours of the 10th was duly received, containing the contract and the reasons given by Mr. Griffin for rejecting the same. Those articles were drawn by one of our most reputable lawyers, and in the usual form. As to the boundary of said land, I had not the papers with me from which to make a deed. Those papers were in Mr. Austin's hands, if you have not got them, etc. As to giving a deed, I have as lief do so as to give a contract. You say doubts have been made as to my ability to make a good title. If this comes from Mr. Austin, he knows better, etc., etc. I wrote Mr. Austin for the papers, and on receiving them I will forward to you a deed with the usual covenants, etc."

This is the last letter to Saunders, and in his supplement Beckwith states that he considered him as the agent of Griffin in making the purchase, and the facts go strongly to this ; that he sent a contract to him containing the stipulations as he understood them ; that he was to execute the deed himself, nothing being said about his wife's interest, she refusing to sell at the price agreed upon, $800 ; that of this sum $300 was to be paid to him in person, and the residue secured by mortgage payable to him in person, or by remitting a draft on a bank in Utica or New York, which would be paid at sight. This contract was the one returned by Saunders in his letter of the 10th of January, 1854, in which all the objections made by Griffin are contained, and is as follows :

*Farmington, Jan.* 10, 1854.

S. M. Beckwith—*Dear Sir:* I received your letter in due time, and will say to you, that I presented your Article of Agreement to S. P. Griffin, which he does not see fit to sign : first, because he finds in that agreement there is no one bound but himself ; second, he says he will pay interest from the time that the contract was first made in May sometime, and not before. He also says that he will pay to your order good current money, and if you want anything more it must be at your expense. The money is ready for the first payment. He has been informed that you could not make a proper deed to your land, and in that, he says, the manner you have written your agreement convinces him that it is more than half true. He further says he shall not take the land unless you made him a good and sufficient warrantee deed of the same, with signature of your wife attached to the same, if she is living, and he will give you a mortgage on the land. The first payment is ready, to my certain knowledge. He says he shall not pay taxes until he knows what you can do about it.

Up to this time, Jan. 10, 1854, it is very evident that there had been no sale of the land to Griffin, and Beckwith swears in his answer, after that time he had no further communication with Saunders about it. Saunders having failed, under the authority given by letter "D," to secure a conveyance from Beckwith, and Griffin having returned the contract with his reasons for refusal, Beckwith was at perfect liberty to resume whatever authority he may have granted to Saunders to sell. But no authority was granted at any time to sell and receive the payments, nor was currency a proper instrument of payment, it was to be by draft on Utica or New York, payable at sight. That Beckwith had not stipulated in this contract for his wife's signature; that Griffin denied his title, and believed the report was half true that he could not make a title, and that he would not take the land unless a good warrantee deed is made with his wife's signature, and that he will give a mortgage. This was no part of the bargain originally which the parties were negotiating.

To these objections Beckwith replies as an honest man would, as appears by his letter of the 20th January—the last one written—wherein he writes *he* will send a deed "with the usual covenants." Yet in the face of all this, Saunders has the presumption to execute a bond, in the penalty of sixteen hundred dollars, assuming himself to be the agent of Beckwith, and in Beckwith's name, conditioned to make Griffin a good and sufficient warrantee deed in fee simple, for the land, and ante-dates it, to carry out his design, May 13, 1853. A parallel to such conduct can scarcely be found. It forces the belief that Saunders was "art and part" in a combination to take advantage of a non-resident, in a transaction in the profits of which he might participate. The reasons given in his letter of the 10th Jan., why Griffin would not accept the contract, are evidently not well founded, for in no part of the correspondence did Beckwith, in terms, allude to the release of the dower right of his wife, nor to her signature, nor did Griffin believe the title was invalid, because he was willing to accept, and did accept Saunders' bond for a good title; and that interest was claimed from April instead of from May, is too trifling to have any weight.

Up to Jan. 20, 1854, then, it is, as we have said, very evident no sale of this land was made, and the execution of a bond, thereafter, for a deed, and ante-dating it, leaves the mind full scope to indulge in the worst suspicions of the integrity of the two prominent parties in this transaction: Saunders, the principal witness for the complainant, and the complainant himself. Doubtless it became known in the neighborhood that appellant here, or other person, was negotiating in the winter of 1854 for

the land; in fact, Hunter's deed was executed early in March, at which time perhaps, the value of the land having been enhanced, the minds of the parties were exercised how to defeat this purchaser, and resort was had to the expedient of assuming to be the agent of the owner, executing a bond in his name in a heavy penalty, and ante-dating it back to the time when negotiations were progressing for the sale. Such practices should never succeed. There must be good faith and the strictest honesty in all such transactions, especially in the case of a non-resident, who cannot see the game that is playing, or know the value of his property, or what accidental circumstances have suddenly occurred to augment its value.

At no time was Saunders the agent of Beckwith to sell and convey this land—he was rather the agent of Griffin to purchase —nor was he authorized to receive the money if the land was sold, or to take notes. Beckwith directs him to procure drafts, payable at sight, on New York, as appears by his letter of Dec. 27, 1853. Cash funds, and not the currency of this State, were to be the medium of payment, and made to Beckwith himself. Notes of other parties, no matter how responsible, were no payment, even if Saunders had authority to sell.

We deem it unnecessary to inquire if the deed of Beckwith to Hunter did not revoke whatever authority was conferred upon Saunders, or into the power of a party, while a contract is *in fieri*, to revoke an authority, nor to inquire whether or not Saunders should not have been made a party, he holding money or notes not belonging to him, but to the complainant, for we consider the whole case so destitute of merit as not to require any further consideration.

The decree is reversed and the bill dismissed.

*Decree reversed and Bill dismissed.*